# FOR PUBLICATION

**FILED & ENTERED**

**OCT 31 2018**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.: 8:18-bk-11997-MW |
| QDOS, Inc | CHAPTER 11 |
| | **MEMORANDUM DECISION AND ORDER** |
| Debtor(s). | Hearing Date: October 17, 2018<br>Time: 9:00 a.m.<br>Courtroom: 6C |

Damian D. Capozzola, Esq. and Timothy R. Laquer, Esq. of Law Offices of Damian D. Capozzola for Debtor and Movant QDOS, Inc.

Patrick M. Costello, Esq. of Vectis Law for Petitioning Creditors.

**WALLACE, J.**

    This matter is before the Court on a corporate debtor's motion to dismiss an involuntary chapter 11 petition filed against it by three, and later four, alleged creditors. The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and General Order 13-05, filed July 1, 2013, of the United States District Court for the Central District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioning creditors Carl Wiese, as trustee of the Wiese Family Trust dated as of October 31, 2013 ("Mr. Wiese"), Felice Terrigno ("Mr. Tarragon") and Matthew Hayden ("Mr. Hayden") (collectively, Mr. Wiese, Mr. Tarragon and Mr. Hayden shall be referred to as the "Original Petitioning Creditors") filed an involuntary chapter 11 petition against QDOS, Inc. (aka Desksite) ("QDOS") on May 31, 2018. QDOS filed a Notice of Motion and Motion to Dismiss Involuntary Petition and Request for Costs, Fees and Damages (Docket No. 7) on June 22, 2018 (the "Motion") pursuant to Federal Rule of Bankruptcy Procedure 1011 (incorporating by reference Federal Rule of Civil Procedure 12 and more particularly Rule 12(b)). In the Motion, QDOS contests the involuntary petition on the grounds that (1) the Original Petitioning Creditors fail to qualify under 11 U.S.C. § 303(b)(1) as the kind of creditors who are entitled to file an involuntary petition and (2) the involuntary petition was filed in bad faith.

The Motion was set for hearing on August 8, 2018 at 9:00 a.m. In advance of the hearing, the Court published a tentative ruling to grant the Motion and dismiss the case on the ground that Mr. Terrigno was not a qualified petitioning creditor and, therefore, that too few qualified petitioning creditors existed to support the petition. At approximately 1:00 p.m. on August 6, 2018, less than 48 hours prior to the scheduled hearing, alleged creditor Jim Maddox filed a Joinder in Involuntary Petition, Docket No. 27, thereby joining in the involuntary petition against QDOS. (Mr. Maddox together with the Original Petitioning Creditors shall be referred to as the "Petitioning Creditors.")

In view of this development, the Court continued the hearing on the Motion to August 10, 2018 at 10:00 a.m. and ordered that it be an evidentiary hearing in the nature of a trial and that the Petitioning Creditors personally appear at such hearing. Counsel for the Petitioning Creditors complained in a letter to the Court dated August 9, 2018 (Docket No. 38) that Mr. Terrigno, Mr. Maddox and Mr. Wiese were all out of state and unavailable to attend on August 10. Based upon the unavailability of all Petitioning Creditors except Mr. Hayden, the Court continued the evidentiary hearing for a period of one month to

September 10, 2018 and again ordered all Petitioning Creditors to attend the September 10 hearing in person and be subject to cross-examination.  (Based upon supplemental pleadings filed by the parties and evidence actually introduced, the Court deems the pleadings to conform to the evidence and proof and therefore treats the Motion as addressing itself to the Petitioning Creditors and not merely the Original Petitioning Creditors.)

Following the rescheduling of the evidentiary hearing to September 10, 2018, Mr. Terrigno filed a Supplemental Declaration of Felice Terrigno Re Motion to Dismiss, Docket No. 48, filed August 22, 2018, alleging various reasons why he should qualify as a petitioning creditor and also informing the Court that, notwithstanding the Court's order, he would not be appearing at or attending the September 10, 2018 evidentiary hearing.  Mr. Maddox filed a similar declaration (Docket No. 49, filed August 23, 2018), advising that he too would not be attending the September 10 evidentiary hearing.

Mr. Terrigno and Mr. Maddox each failed to appear at the evidentiary hearing with respect to the Motion on September 10, 2018.  However, due to certain unfortunate ambiguities in the Court order setting the evidentiary hearing, counsel for QDOS appeared at one time and counsel for the Petitioning Creditors appeared at a different time, leading the Court to continue the evidentiary hearing once again, this time to October 17, 2018.  Once again, each Petitioning Creditor was ordered to appear at the hearing so that he might be cross-examined by QDOS's counsel regarding the contents of declarations made by him allegedly supporting the contention that he was a qualified petitioning creditor under applicable bankruptcy law.

The Court had previously ordered that if a Petitioning Creditor failed to appear at the October 17, 2018 evidentiary hearing, any and all declarations filed by such Petitioning Creditor would be stricken.  For a third time, Mr. Maddox failed to appear after being ordered to do so by this Court.  In a transparent effort to avoid the effect of the striking of Mr. Maddox's declarations, Mr. Maddox filed Proof of Claim 7-1 on September 26, 2018.  In this cagily-drafted document, Mr. Maddox does not actually assert how much he is owed by

QDOS; he merely states that he is owed "not less than $220,000.00." He also asserts in the Proof of Claim that he has eliminated any claim for interest. (QDOS had previously argued that the loan Mr. Maddox made to QDOS was usurious and that therefore the claim was in bona fide dispute.) By reason of Mr. Maddox's failure to appear for a third time at an evidentiary hearing after being ordered to do so by this Court, the Court determines that QDOS's due process rights were violated and that QDOS was prejudiced by its inability to cross-examine Mr. Maddox under oath regarding his claim and his alleged status as a qualified petitioning creditor.

## REQUIREMENTS FOR A VALID INVOLUNTARY BANKRUPTCY PETITION

11 U.S.C. § 303(b)(1) provides in relevant part that "[a]n involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title — (1) by three or more entities, each of which is . . . a holder of a claim against such person that is not contingent as to liability **or the subject of a bona fide dispute as to liability or amount** . . . if such noncontingent, undisputed claims aggregate at least $15,775 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims." (Boldfaced type added by the Court.)

11 U.S.C. § 303(b)(2) sets forth a separate rule that governs when there are fewer than 12 such holders. At the evidentiary hearing, Richard Gillam ("Mr. Gillam"), QDOS's chief executive officer, testified that QDOS has between 40 and 50 creditors holding undisputed claims.[1]  Thus, 11 U.S.C. § 303(b)(2) is inapplicable here.

Petitioning Creditors bear the burden of proving all the statutory requirement elements of 11 U.S.C. § 303(b)(1). If they meet this burden, the burden of proof then shifts to the alleged debtor to show that there is a dispute as to a material fact. If there is a genuine issue of material fact that bears upon the debtor's liability or amount of the claim, then the petition must be dismissed. *Laxmi Jewel Inc. v. C&C Jewelry Mfg., Inc. (In re C&C Jewelry Mfg., Inc.)*, BAP Nos. CC-08-1190-HMoMk, CC-08-1267-HMoMk, 2009 Bankr.

---

[1] Reporter's Transcript ("R.T.") at 97-98.

LEXIS 4517 at *21-22 (B.A.P. 9th Cir., April 14, 2009) (unpublished but cited for persuasive value).

A. <u>The Status of Mr. Terrigno as a Qualified Petitioning Creditor</u>.

Two sets of subscription documents were transmitted to Mr. Terrigno with respect to his investment in QDOS: subscription documents for the purchase of QDOS common stock[2] and subscription documents (a Participation Agreement) for the making of a loan to QDOS.[3] Mr. Terrigno executed the QDOS common stock subscription agreement, thereby making a $60,000 investment in QDOS common stock, and returned it to QDOS.[4]

Mr. Terrigno testified that he thought he was making a loan to QDOS when he executed subscription documents, not buying common stock.[5] The Court determines that such testimony is not credible. Mr. Terrigno is a graduate of West Point and has a graduate degree in Business from Rice University. The Court concludes that Mr. Terrigno knew exactly what he was buying when he sent in his $60,000 – and even if he did not, the fact of the matter is that he bought common stock, not a QDOS promissory note.

Petitioning Creditors make much of the fact that Mr. Gillam later sent Mr. Terrigno an email on February 27, 2018 stating that "there is zero debate nor question on our side that you're owed $60k."[6] However, Mr. Gillam testified that he prepared the February 27 email in haste, without actually checking the QDOS records to see if Mr. Terrigno was a creditor or a shareholder and taking him at his word that he was a creditor.[7] The Court finds Mr. Gillam's testimony credible in this regard, noting that the emails show that there is only a 54 minute timespan between the transmission of Mr. Terrigno's email inquiry and Mr. Gillam's email reply.

---

[2] Exhibit 30.
[3] Exhibit U.
[4] Exhibit 29.
[5] R.T. at 47.
[6] Exhibit P at its Exhibit B.
[7] R.T. at 107-110.

The Court concludes that Mr. Terrigno is not a qualified petitioning creditor under 11 U.S.C. § 303(b)(1) because he holds an interest, namely, QDOS common stock, not a claim.

B. <u>The Status of Mr. Maddox as a Qualified Petitioning Creditor</u>.

Unlike the case of Mr. Terrigno, there is no question that Mr. Maddox is a creditor, not an interest holder. Rather, the dispute between QDOS and the Petitioning Creditors revolves around whether Mr. Maddox holds an undisputed claim or, alternatively, a claim that is "the subject of a bona fide dispute as to liability or amount . . ." within the meaning of 11 U.S.C. § 303(b)(1). QDOS contends that the loan made by Mr. Maddox is usurious, and therefore that the interest charges on the loan cannot be lawfully collected under California law. Petitioning Creditors argue that even if the loan is usurious, only interest is cancelled, not principal, and the principal portion of the loan is not subject to any bona fide dispute as to liability or amount.

Although the plain language of the statute (i.e., 11 U.S.C. § 303(b)(1)) as well as the legislative history is about as clear as it can possibly be, a surprising number of courts, both before and after the enactment of the BAPCPA amendments to section 303(b)(1) — and the *Collier on Bankruptcy* treatise — have reached the conclusion that a claim that is <u>partially</u> disputed as to amount — as the Maddox claim is here — is somehow not a claim that is "the subject of a bona fide dispute as to liability or amount . . ." within the meaning of 11 U.S.C. § 303(b)(1).[8]

If a claim is disputed as to liability, then the entire amount of the claim is disputed.[9] If a claim is disputed as to "amount," this implies that less than the entire amount is disputed. If the rule were otherwise – that is, if the <u>entire</u> amount had to be disputed to make the claim

---

[8] *See* 2 *Collier on Bankruptcy* ¶ 303.11[2] and cases cited therein.
[9] If 11 U.S.C. § 303(b)(1) had not used the words "or amount," it might be plausible to contend that a claim where liability was disputed as to only a portion of the claim is a claim disputed as to liability. The addition of the words "or amount" would seem to justify – for purposes of avoiding the assignment of the same meaning to different terms – treating a dispute as to liability as a dispute over the entirety of the claim (i.e., the entire amount) and a dispute as to amount as a dispute over a portion of the claim.

disputed as to amount – then the word "amount" in the statute would be redundant because it would mean the same thing as "liability." In construing a statute, a federal court is <u>obliged</u> to give effect, if possible, to every word Congress used. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); *Lyon v. Chase Bank United States, N.A.*, 656 F.3d 877, 890 (9th Cir. 2011) (emphasis added). This is best done by interpreting a dispute as to liability as a dispute over the entirety of the claim and a dispute as to amount as a dispute only over a portion of the claim.

Additionally, the legislative history shows that from the inception, Congress intended that a bona fide dispute as to either liability or the amount of a claim be sufficient to disqualify the creditor holding such claim from qualifying as a petitioning creditor in an involuntary case. Senator Max Baucus made the following statement found in the Congressional Record with respect to 1984 amendments to the Bankruptcy Code of 1978:

> Mr. President, my amendment is designed to correct what I perceive to be an unintended inequity in the law of involuntary bankruptcies . . . The problem can be explained simply. Some courts have interpreted section 303's language on a debtor's general failure to pay debts as allowing the filing of involuntary petitions and the granting of involuntary relief even when the debtor's reason for not paying is a legitimate and good faith dispute over his or her liability. This interpretation allows creditors to use the Bankruptcy Code as a club against the debtors who have bona fide questions about their liability, but who would rather pay up than suffer the usual stigma of involuntary bankruptcy proceedings. My amendment would correct this problem. Under my amendment, the original filing of an involuntary petition could not be based on debts that are the subject of a good-faith dispute between the debtor and his or her creditors. In the same vein, the granting of an order of relief could not be premised solely on the failure of a debtor to pay debts that were <u>legitimately contested as to liability or amount</u>. I believe that this amendment, although a simply [sic] one, is necessary to protect the rights of debtors and to prevent the misuse of

the bankruptcy system as a tool of coercion.[10]  (Underscoring added by the Court.)

Thus, from at least the time of the 1984 amendments to the Bankruptcy Code, it was or should have been clear from the legislative history quoted above that a legitimate dispute as to either liability or amount ("amount" meaning something less than the full amount of the claim, because a dispute as to the full amount of a claim is a dispute as to liability) was sufficient to disqualify a claim holder from being a petitioning creditor.  Certain courts did not reach this result and determined that a holder of a partially disputed claim could still qualify as a petitioning creditor.  If any further proof were needed to show that this conclusion was incorrect, such proof came in the form of the BAPCPA amendments to section 303, which added the words "as to liability or amount" to the statute.  Nevertheless, some courts persist in reading the words "or amount" out of the statute despite the illogic of this interpretation.[11]

The magnitude of a particular dispute is not necessarily related to whether such dispute is over liability or amount.  If the magnitude of a dispute is proportional to the amount of dollars at stake, a dispute over whether the amount of the claim should be $50 million or $150 million is of greater magnitude than a dispute over liability with respect to a $10,000 claim.  Everything else being equal, and assuming each creditor would like to use the bankruptcy system as a tool of coercion, the creditor holding the $50 million/$150 million claim would seem to have a greater incentive to join an involuntary petition than the creditor holding the $10,000 claim.  It is folly to believe that a debtor automatically has more to fear being pushed into bankruptcy by a creditor holding a claim disputed as to liability than from a creditor whose claim is disputed as to amount.

---

[10] *Bankruptcy Reform Amendments:  A Legislative History of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Public Law 98-353 (1992),* D. Bernard, E.M. Wypinski Reams, A.N. Resnick, *downloaded from* https://heinonline.org/HOL/Print?collection=leghis&handle=hein.bank/banrefam0010&id=646.

[11] *See 2 Collier on Bankruptcy* ¶ 303.11[2] and cases cited in footnote 34.  It might be argued that a $100,000 claim that is only disputed as to $1,000 should not be treated as a claim subject to a bona fide dispute because that would elevate form over substance.  However, it would equally elevate form over substance to treat a $100,000 claim that is disputed as to $99,000 as a claim that is not subject to a bona fide dispute.  Finally, there is nothing in either the language of the statute or the legislative history providing support for the notion that a dispute as to amount must rise to either an absolute or a relative level before a bona fide dispute can be found to exist.

On an even more basic level, the proposition "a partially disputed claim is a disputed claim" is not only true, <u>it is necessarily true</u>.  Its truth is not contingent on anything, and it would be contradictory to deny that a partially disputed claim is nonetheless a disputed claim.  The word "dispute" includes within it various degrees, just like the term "bald."  If a creditor sent a debtor an invoice for $1,000, and the debtor wrote back that he owed only $600, it is properly said that the invoice is in dispute.  Equally true, it would be palpably false to state under these circumstances that the invoice is <u>not</u> in dispute.  Only under the rarest of circumstances does the resolution of legal questions involve an inquiry into the philosophical concept of necessary truth, yet this is one of those rare instances because of various pre-BAPCPA and post-BAPCPA cases holding contrary to the plain meaning rule, legislative history, statutory interpretation principles and logic that a partially disputed claim is not "a claim . . . that is . . . the subject of a bona fide dispute as to . . . amount."

For these reasons, the Court concludes that a dispute as to a portion of a claim can be a bona fide dispute as to liability or amount.  The Court therefore follows the decisions of other courts reaching a similar conclusion.  *Laxmi Jewel Inc. v. C&C Jewelry Mfg., Inc. (In re C&C Jewelry Mfg., Inc.), supra;*[12] *In re Rosenberg*, 414 B.R. 826, 845-46 (Bankr. S.D. Fla. 2009); *Reg'l Anesthesia Assocs. PC v. PHN Physician Servs. (In re Reg'l Anesthesia Assocs. PC)*, 360 B.R. 466, 470 (Bankr. W.D. Pa. 2007);[13] *In re Euro-American Lodging Corp.*, 357 B.R. 700, 712 (Bankr. S.D.N.Y. 2007).  *See also* 2 *Collier on Bankruptcy* ¶ 303.11[2] at footnote 32 and cases cited therein.

The next issue facing the Court is whether a bona fide dispute exists as to the Maddox claim.  In order for a bona fide dispute to exist, the alleged debtor must do more than just disagree with the amount of the claim.  Rather, the court must determine whether there is "an objective basis for either a factual or legal dispute as to the validity of the debt."

---

[12] "The Ninth Circuit has not yet interpreted the new language of § 303(b) and (h); however, other courts have held that an objective legitimate dispute as to an amount owed on a petitioning creditor's claim is sufficient to demonstrate a bona fide dispute and forestall a petitioning creditor from maintaining an involuntary petition under § 303(b)." 2009 Bankr. LEXIS 4517 at *18-19.

[13] "As a result of the [BAPCPA] amendment, any dispute regarding the amount that arises from the same transaction and is directly related to the underlying claim should render the claim subject to a bona fide dispute."

*In re Vortex Fishing Sys., Inc.,* 277 F.3d 1057, 1064 (9th Cir. 2002).  The court need not "evaluate the potential outcome of a dispute" but must "determine whether there are facts that give rise to a legitimate dispute over whether money is owed, or, in certain cases, how much."  *Laxmi Jewel Inc. v. C&C Jewelry Mfg., Inc. (In re C&C Jewelry Mfg., Inc.), supra,* 2009 Bankr. LEXIS 4517 at *21 (quoting *Vortex*).

The Maddox claim is based upon a promissory note with a principal amount of $250,000 and carrying a "loan fee" of $25,000.[14]  The loan's term is six months, so the effective per annum interest rate is 20 percent.  California's Constitution prohibits commercial loans with rates in excess of 10 percent.  California Constitution, Article XV, Section 1.

Petitioning Creditors argue that the "loan fee" is not interest – even though, if it is not interest, there is no other interest required to be paid under the promissory note – and that there are various exceptions to the usury law that apply to this particular loan.  Petitioning creditors have not made a sufficient showing that either of these arguments carries the day.  QDOS has cited California state case authority indicating that loan fees are permitted when they are "reasonable amount[s] for incidental services, expenses or risk <u>additional to lawful interest</u>," *Klett v. Security Acceptance Co.,* 38 Cal. 2d 770, 787 (1952) (underscoring added), and Petitioning Creditors have in no way shown what "incidental services, expenses or risk" would render a $25,000 loan fee reasonable on a six-month $250,000 loan.  Nor have they shown what exceptions to the usury law would apply in this case.  Clearly, the underlying facts here give rise to a legitimate dispute over how much money is owed.

The Court holds that a bona fide dispute exists as to the amount of the Maddox claim, and therefore that Mr. Maddox is not qualified to be a petitioning creditor in this case.

As an alternative holding, the Court determines that Mr. Maddox's Proof of Claim will not be taken into account in determining whether he has a claim for purposes of being a qualifying petitioning creditor.  The basis for not taking Mr. Maddox's Proof of Claim into account is twofold:  (1) his repeated violations this Court's orders requiring him to appear,

---

[14] Exhibit Q at its Exhibit A.

despite two re-schedulings of the evidentiary hearing, and (2) violation of QDOS's due process rights to examine him concerning the declarations and Proof of Claim that he filed, especially in a situation where the Proof of Claim does not affirmatively state a sum certain owed but instead cagily states "not less than $220,000." In a nutshell, Mr. Maddox cannot be permitted to disobey multiple Court orders requiring his appearance at an evidentiary hearing, consistently dodge cross-examination on pleadings he filed in support of the contention that he is a qualified creditor and still qualify as a petitioning creditor. There being no probative evidence of Mr. Maddox's claim – all his declarations having been stricken and his proof of claim not being taken into account – Petitioning Creditors have failed to meet their burden of proof and therefore the Court determines on these alternative grounds that Mr. Maddox is not qualified to be a petitioning creditor in this case.

C. <u>Other Issues in the Case</u>.

With the elimination of Mr. Terrigno and Mr. Maddox as qualifying petitioning creditors, only two alleged petitioning creditors remain, namely, Mr. Wiese and Mr. Hayden. This is not a sufficient number to satisfy the three-creditor rule of 11 U.S.C. § 303(b)(1). Accordingly, the Court does not need to reach, and does not reach, the issues of whether Messrs. Wiese and Hayden are qualifying petitioning creditors and whether the involuntary petition was filed in bad faith.

## CONCLUSION

The Court grants the parties' requests for judicial notice relating to the Motion.

The Court grants Debtor's Motion. The involuntary petition against QDOS is dismissed with prejudice for the reasons stated above.

Pursuant to 11 U.S.C. § 303(i)(1), the Court sets a hearing on January 28, 2019 at 2:00 p.m. on the issue of whether the Court should grant judgment against Mr. Wiese, Mr. Hayden, Mr. Terrigno and Mr. Maddox and in favor of QDOS for reasonable attorneys' fees and costs incurred by QDOS in connection with this involuntary petition proceeding. In that

connection, QDOS's brief is due on or before November 30, 2018; Petitioning Creditors' brief is due December 31, 2018; and QDOS's reply is due January 14, 2019.

IT IS SO ORDERED.

###

Date: October 31, 2018

Mark S. Wallace
United States Bankruptcy Judge